UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHANE OTERO,

    Applicant,

v.                                              CASE NO. 8:19-cv-39-SDM-AEP

SECRETARY, Department of Corrections,

    Respondent.
_____/

## ORDER

Otero applies (Doc. 1) under 28 U.S.C. § 2254 for the writ of habeas corpus and challenges his convictions for sexual battery on a child under twelve, lewd and lascivious molestation of a child under twelve, and attempted lewd and lascivious molestation of a child under twelve, for which Otero is imprisoned for life. Numerous exhibits ("Respondent's Exhibit") support the response. (Doc. 9) The respondent correctly argues that one ground is procedurally barred from federal review but concedes that the application is timely. (Response at 2, Doc. 9)

### I.    BACKGROUND[1]

Otero's five year old daughter and her friend were in Otero's custody when his daughter's mother was called into work. Upon the mother's return that evening, the

---

[1] This summary of the facts derives from Otero's brief on direct appeal. (Respondent's Exhibit 8) and the state court's findings of fact in the post-conviction court's order. (Respondent's Exhibits 31)

girls told her that Otero played a game with the girls during which the girls would have to touch his "privates" to receive a lollipop. Otero's daughter played the game because she wanted a lollipop but her friend (who was under five) was unwilling to touch Otero. Also, Otero's daughter testified that he touched her "private area" with his "private area" when they were both naked and that this had happened before.

A physician's assistant testified that after examining the daughter he could not determine whether the girl was or was not sexually abused. The friend's pediatrician testified (1) that she examined the little girl and found no evidence of sexual abuse and (2) that the absence of physical evidence of sexual abuse was not inconsistent with what the girl said about her interaction with Otero.[2]

Both girls were interviewed by Child Protection Services and the interviews were videotaped. The recordings were entered into evidence and played for the jurors, who were allowed to re-play the recordings in the jury room during deliberations.[3]

## II. **EXHAUSTION AND PROCEDURAL DEFAULT**

The respondent argues that ground one is procedurally barred from federal review because Otero failed to fully exhaust his available state court remedies. An applicant must present each claim to a state court before presenting the claim to a

---

[2] The two medical experts' testimony about what the girls said is the basis for the claim of ineffective assistance of counsel alleged in ground one.

[3] This re-playing of the recordings in the jury room is the basis for the claim of ineffective assistance of counsel alleged in ground two.

federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 32 (2004) (citing *Duncan*).

**Ground One:**

Otero alleges that trial counsel rendered ineffective assistance by neither objecting to the testimony of the two medical experts nor moving for a mistrial because the experts' testimony "bolstered" the victims' credibility and the case "turned on a credibility contest between [Otero] and the alleged victims." (Doc. 1 at 7) Otero failed to allege this claim in his initial motion under Rule 3.850, Florida Rules of Criminal Procedure, for post-conviction relief (Respondent's Exhibit 12), but he attempted to include this claim more than three years later in a motion for

leave to amend when the case was on remand.⁴ (Respondent's Exhibit 29) The post-conviction court declined to review the new claim because Otero failed to timely assert the claim within Florida's two-year limitation. (Respondent's Exhibit 30)

Otero's failure to timely present the claim in state court causes a procedural default of the unexhausted claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."). As a consequence, ground one is barred from federal review absent a showing of actual "cause and prejudice" or "manifest injustice." *See generally Coleman v. Thompson*, 501 U.S. 722, 748–51 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Otero attempts to show neither "cause and prejudice" nor "manifest injustice." Instead, in his reply (Doc. 11 at 2) Otero argues that review is permitted under *Martinez v. Ryan*, 566 U.S. 1, 9 (2012), which holds that "inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez* creates a narrow equitable exception to *Coleman v. Thompson*, 501 U.S. at 753–754 (holding that an attorney's errors in a post-conviction proceeding do not qualify as cause for a default). Otero misunderstands the narrowness of the equitable exception

---

⁴ Otero alleges only two grounds of ineffective assistance of counsel in his federal application. The claim in ground one is, as discussed next, procedurally barred and the claim in ground two was the basis for the remand.

established in *Martinez*. Because the state court rejected Otero's claim as untimely, *Martinez* is inapplicable. *See, e.g., Chavez v. Sec'y, Dep't of Corr.*, 742 F.3d 940, 945–46 (11th Cir. 2014) (recognizing that *Martinez* is inapplicable to time-barred claims). Therefore, ground one is procedurally barred from federal review and not entitled to a determination on the merits.[5] The remainder of the application is entitled to a review.

### III.   STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light

---

[5] Moreover, ground one fails to assert a "substantial" claim of ineffective assistance of trial counsel because the medical experts' testimony was permitted under state law and neither witness "bolstered" the girls' testimony by stating that they believed that the girls were truthful — the medical experts testified to what the girls told them as a basis for deciding what medical examination to perform.

> of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of

facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim issues a reasoned and explanatory opinion, a federal habeas court reviews the specific reasons as stated in

the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. The State may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Wilson*, 138 S. Ct. at 1192.

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Otero's convictions and sentence. (Respondent's Exhibit 10) Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Otero's Rule 3.850 motion for post-conviction relief. (Respondent's Exhibit 34) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254, *reh'g and reh'g en banc denied*, 278 F.3d 1245 (11th Cir. 2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 562 U.S. at 100 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and

*Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state court decision is limited to the state court record:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

Otero bears the burden of overcoming by clear and convincing evidence a state court's fact determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state post-conviction court's rejection of Otero's claims warrants deference in this federal action. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 31) Otero's federal

application presents the same ground of ineffective assistance of counsel that he presented to the state courts.

### IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Otero claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim, as *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*,
>
>> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
>
> *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

An applicant must prove both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Otero must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Otero must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. As *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021),

explains, deference is to both counsel's and the state court's decisions, recognizing that counsel decides strategic options based on both limited resources and limited time.

> [W]e owe deference to both Reeves' counsel and the state court. As to counsel, we have often explained that strategic decisions — including whether to hire an expert — are entitled to a "strong presumption" of reasonableness. *Harrington v. Richter*, 562 U.S. 86, 104, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). Defense lawyers have "limited" time and resources, and so must choose from among " 'countless' " strategic options. *Id.*, at 106–107, 131 S. Ct. 770. Such decisions are particularly difficult because certain tactics carry the risk of "harm[ing] the defense" by undermining credibility with the jury or distracting from more important issues. *Id.*, at 108, 131 S. Ct. 770.

And *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992), explains that Otero cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Under Section 2254(d) Otero must prove that the state court's decision "(1) [was] contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. *See also Dunn v. Reeves*, 141 S. Ct. at 2410 ("This analysis is 'doubly deferential' when, as here, a state court has decided that counsel performed adequately."); *Pinholster*, 563 U.S. 202 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."); *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011)), *cert. denied*, 140 S. Ct. 2520 (2020); and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 571 U.S. 874 (2013). "And in reviewing the work of their peers, federal judges must begin with the 'presumption that state courts know and follow the law.'

Or, in more concrete terms, a federal court may grant relief only if *every* 'fairminded juris[t]' would agree that *every* reasonable lawyer would have made a different decision." *Reeves*, 141 S. Ct. at 2411 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24, (2002), and *Richter*, 562 U.S. at 101) (italics and brackets original).

In summarily denying Otero's motion for post-conviction relief, the state court recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibit 31 at 2) Because the state court rejected the grounds based on *Strickland*, Otero cannot meet the "contrary to" test in Section 2254(d)(1). Otero instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts. In determining "reasonableness," the statute limits federal review to determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not independently assessing whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). The presumption of correctness and the highly deferential standard of review requires that the analysis of each ground begin with the state court's analysis.

**Ground Two:**

Otero alleges that trial counsel was ineffective for not objecting to the trial court allowing the jury to re-play the recording in the jury room during deliberations. Initially the post-conviction court summarily denied this claim, but the district court of appeal reversed and remanded. (Respondent's Exhibit 25) On remand the

post-conviction court again denied this claim as follows (Respondent's Exhibit 31 at 2–4) (footnotes omitted):

> The Defendant claims he was denied effective assistance of counsel when defense counsel failed to object, and in fact agreed, to the jury's viewing of video recordings of the victims' Child Protection Team (CPT) interviews in the jury room during its deliberations.
>
> The Second District Court of Appeal found this Court incorrectly denied the claim based on its observation that defense counsel had been granted a standing objection on this issue. The standing objection, however, related to the jury's viewing the videos altogether, not the location of the viewing. The Second District cited *Young v. State*, 645 So. 2d 965, 967 (Fla. 1994), which held that such videotaped interviews should not be allowed into the jury room because of the "real danger that the child's statements will be unfairly given more emphasis than other testimony." The proper response to a jury's request to view a taped interview is to replay it in open court. *Id.* at 698. The Second District identified information bearing on the issue of prejudice, including the content of the recorded interviews, the content of the victims' in-court testimony, or the time that elapsed between the jury's receipt of the video recordings and its verdict.
>
> At the Court's direction, the State filed written argument and an appendix of supporting record documents in response to Ground One. The State's response argues for summary denial of the claim because (1) the Defendant consented to the jury's viewing the videotaped interviews in the jury room; and (2) the record shows the Defendant was not prejudiced by the manner in which the jury viewed the videotaped interviews. After careful review of the record, the Court adopts and incorporates into this Order the State's response with regard to prejudice and finds that the Defendant was not prejudiced in this case by the manner in which the jury viewed the videotaped CPT interviews.
>
> The jury in this case heard a read back of each victim's in-court testimony immediately after viewing each videotaped interview in the jury room. This provided the jury an opportunity to make direct comparisons rather than unfairly emphasizing the videotaped interviews over other testimony. A comparison of each victim's trial testimony to her CPT interview shows they

> remained largely consistent in material respects throughout both statements. The record shows the jury possessed [the daughter]'s videotaped interview (duration 25 minutes, 25 seconds) a total of 43 minutes. The jury possessed [the friend]'s videotaped interview (duration 24 minutes, 8 seconds) a total of 71 minutes. After viewing the two videotaped interviews and immediately afterward hearing the read back of the victims' trial testimony, the jury deliberated another 50 minutes before reaching a verdict. Thus, the jury did not possess the videotaped interviews for an extended period of time that would have permitted multiple re-plays of the CPT interviews. On this record, the Court finds that even had the jury viewed the videotaped interviews in the courtroom, there is no reasonable likelihood that the result of the trial would have been different. That is, counsel's performance did not so affect "the fairness and reliability of the proceedings that confidence in the outcome is undermined." *Peterka*, 890 So. 2d at 228. Because the Court finds the Defendant was not prejudiced, it follows that defense counsel did not render ineffective assistance.

On the ensuing appeal neither Otero's appointed counsel nor Otero *pro se* filed an initial brief. (Respondent's Exhibit 33) The state circuit court affirmed the above district court's ruling in a *per curiam* decision without a written opinion. (Respondent's Exhibit 34)

As stated earlier, the post-conviction court's factual findings bind this court and the state court's application of *Strickland* is entitled to "double deference." The post-conviction court (1) found, in addition to other facts, "that the jury did not possess the videotaped interviews for an extended period of time that would have permitted multiple re-plays of the CPT interviews;" (2) determined "that even had the jury viewed the videotaped interviews in the courtroom, there is no reasonable likelihood that the result of the trial would have been different;" and (3) ruled that Otero failed to meet *Strickland's* prejudice requirement. Although he disagrees with

the state court (Doc. 11 at 4–5), Otero presents no basis for rejecting the findings, determinations, and ruling. On the contrary, based on this record the state court reasonably applied *Strickland* in ruling that Otero showed no prejudice. Consequently, Otero shows no entitlement to relief under ground two.

**Ground Three:**

Otero asserts entitlement to relief based on the cumulative effect of the claims of ineffective assistance of counsel alleged in grounds one and two. Otero can prove cumulative error only by showing two or more errors. "Without harmful errors, there can be no cumulative effect compelling reversal." *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984), *cert. denied*, 469 U.S. 1158 (1985). *See Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004) ("[T]he court must consider the cumulative effect of [the alleged errors] and determine whether, viewing the trial as a whole, [the applicant] received a fair trial as is [his] due under our Constitution."); *Lucas v. Warden, Georgia Diagnostic & Classification Prison*, 771 F.3d 785, 802 (11th Cir. 2014) ("We are equally unpersuaded that the cumulative effect from Lucas's *Strickland* and *Brady* claims entitles him to relief.") (citing *Conklin*), *cert. denied sub nom Lucas v. Humphrey*, 136 S. Ct. 135 (2015). Because ground one is procedurally barred from federal review and ground two lacks merit, Otero proves no error to accumulate to show cumulative prejudicial effect. *See Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the

- 17 -

hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it. Twenty times zero equals zero."). Otero is entitled to no relief under ground three.

## V.  CONCLUSION

Otero fails to meet his burden to show that the state court's decision was either an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact. As *Burt v. Titlow*, 571 U.S. 12, 19–20 (2013), states:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103] (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at [102]. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at [103] (internal quotation marks omitted).

Otero's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk must enter a judgment against Otero and **CLOSE** this case.

### DENIAL OF BOTH
### A CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Otero is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Otero must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists would debate either the merits of the grounds or the procedural issues, Otero is entitled to neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Otero must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 7, 2022.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE